UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM O. RHYDER, | : | |
| | : | |
| Plaintiff, | : | Civil No. 3:16-CV-00884 |
| | : | |
| v. | : | |
| | : | (Judge Kosik) |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of | : | FILED |
| Social Security | : | SCRANTON |
| | : | |
| Defendant. | : | JAN 0 9 2017 |
| | : | |

**MEMORANDUM**

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner"), denying Plaintiff William O. Rhyder's application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI. For the reasons set forth below, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

## I. BACKGROUND

Rhyder applied protectively for DIB and SSI on December 1, 2009, alleging disability beginning June 23, 2009. (Tr. 190-96, 197-201).[1] Rhyder later amended the alleged onset date to March 2, 2012. (Tr. 232). His claim was initially denied on June 2, 2010. (Tr. 118).

Rhyder requested a hearing before the Administrative Law Judge ("ALJ") Office of Disability and Adjudication and Review of the Social Security Administration, and one was held

---

[1] References to "Tr. ___" are to pages of the administrative record filed by the Defendant as part of the Answer (Docs. 4 and 5) on July 14, 2016.

1

on June 8, 2011. (Tr. 158-59, 59-93). At the hearing, Rhyder was represented by counsel, and a Vocational Expert testified. (Tr. 59-93). On August 24, 2011, the ALJ issued a decision denying Rhyder's application. (Tr. 127-43). Rhyder filed a request for review with the Appeals Council, which was granted. (Tr. 144-49). A second hearing was conducted on January 27, 2014 before the same ALJ. (Tr. 94-117). Again, Rhyder was represented by counsel and a Vocational Expert testified. (Id). On March 22, 2014, the ALJ again issued a decision finding Rhyder not disabled. (Tr. 20-40). The Appeals Council subsequently denied Rhyder's request for review. (Tr. 1-6). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Rhyder filed a complaint in this Court on May 16, 2016. (Doc. 1). The Commissioner filed an answer on July 14, 2016. (Doc. 4). After supporting and opposing briefs were submitted (Docs. 8, 11, 12), the appeal[2] became ripe for disposition.

Rhyder was born in March of 1957 (Tr. 118), and has a 10th grade education. (Tr.118). In the past, Rhyder worked as a warehouse worker, forklift operator, and auto body technician. (Tr. 126, 138, 269). Rhyder has not engaged in substantial gainful activity since the amended alleged onset date of disability, March 2, 2012. (Tr. 25, 232).

Rhyder has the following severe impairments: bipolar disorder, anxiety disorder, lumbar degenerative disc disease/degenerative joint disease, and a history of right rotator cuff tear/impingement. (Tr. 26).

## II. STANDARD OF REVIEW

When considering a social security appeal, the Court has plenary review of all legal issues

---

[2] Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

2

decided by the Commissioner. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id. The factual findings of the Commissioner, "if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 529 F.3d at 200 (3d Cir. 2008) (quoting Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)) (internal quotations and citations omitted). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The Third Circuit Court of Appeals has stated,

> [O]ur decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983); Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986)). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Id. (citing

Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).

## III. SEQUENTIAL EVALUATION PROCESS

The plaintiff must establish that there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427) (internal quotations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Fargnoli, 247 F.3d at 39 (quoting 42 U.S.C. § 423(d)(2)(A)). The Commissioner follows a five-step inquiry pursuant to 20 C.F.R. § 404.1520 to determine whether the claimant is disabled. In Plummer, the Third Circuit Court of Appeals set out the five-steps:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § [404.]1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987) . . . . In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).

> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See, [sic] Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

Plummer, 186 F.3d at 428.

## IV. DISCUSSION

The ALJ went through each step of the sequential evaluation process and (1) found that Rhyder had not engaged in substantial gainful activity since March 2, 2012, the amended alleged onset date; (2) found that Rhyder had the severe impairments of bipolar disorder, anxiety disorder, lumbar degenerative disc disease/degenerative joint disease, and a history of right rotator cuff tear/impingement; (3) found that Rhyder's impairments did not meet or equal a listed impairment; (4) found that Rhyder lacked credibility; and (5) concluded that Rhyder could not perform his past relevant work, but that he could perform medium work with several limitations (Tr. 25-28). Specifically, the ALJ found that the medium work had to be limited to "occasional bending, stooping, crouching, crawling, kneeling, balancing, and climbing, but never on ladders, ropes, or scaffolds." (Tr. 28). The ALJ also found that Rhyder "must avoid overhead reaching with the right dominant upper extremity ... concentrated exposure to temperature extremes, wetness, humidity, and vibrations." (Id). Rhyder was further limited to "simple, routine tasks performed in a low stress work environment defined as involving only occasional decision making and only occasional changes in work setting." (Id). Finally, the ALJ found that Rhyder

is "limited to no more than occasional interaction with the general public, co-workers, and supervisors." (Id).

Rhyder appeals the ALJ's determination on three grounds: (1) the ALJ erred in finding Rhyder could perform jobs that were precluded by the ALJ's residual function capacity ("RFC"), (2) the ALJ lacked evidence to support the RFC, and (3) the ALJ erred by basing her entire RFC finding on her view of Rhyder's credibility.

## STEP FOUR EVALUATION - RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT

### *i. Medical Evidence*

Rhyder has been receiving treatment for both mental and physical health problems. Rhyder was seen and assessed by Anil Saxena, M.D. Dr. Saxena, a psychiatrist, prescribed Depakote, a psychotropic medication to Rhyder, and the treatment notes show several modifications in medication and ongoing individual therapy. (Tr. 336-358). Michael T. Degilio, Psy.D., examined and evaluated Rhyder, beginning in November 2008 through October 2010 on a weekly/bi-weekly basis. (Tr. 362). Dr. Degilio diagnosed him with biopolar disorder and alcohol dependence. (Id). On February 8, 2010, Dr. Degilio provided a medical source statement for Rhyder, opining that Rhyder had regular mood swings, had rapid and pressured speech, impaired concentration, and is very impulsive. (Tr. 361-68). Dr. Degilio noted that Rhyder demonstrates difficulties performing daily activities on a sustained basis, and demonstrates difficulties in the ability to get along, interact, or communicate with persons. (Tr. 364-65). Dr. Degilio reported that Rhyder's ability to interact appropriately with the public, and respond appropriately to work pressures and changes in a usual or routine work setting as being extremely restricted. (Tr. 367). Rhyder's ability to interact appropriately with supervisors and

co-workers was noted by Dr. Degilio to be markedly restricted. (Id).

Rhyder was also evaluated by David Smock, Ph.D. on March 8, 2010, at the request of the State agency. Dr. Smock diagnosed Rhyder with bipolar disorder, hypomanic, and alcohol abuse in remission. (Tr. 381). Dr. Smock further opined that Rhyder would have marked limitations in understanding and remembering short, simple instructions and extreme limitations in carrying out short, simple instructions, understanding, remembering, and carrying out detailed instructions, and making judgements on simple work-related decisions. (Tr. 374). Dr. Smock also found Rhyder to have extreme limitations in interacting appropriately with the public, supervisors, and co-workers, as well as responding appropriately to work pressures and changes in a usual and routine work setting. (Id).

Finally, Dr. Mrykalo, a non-examining State agency psychological consultant, indicated that Rhyder had moderate limitations in his mental functional capacity and that he is not significantly limited in his ability to make simple work decisions, and perform simple, routine tasks. (Tr. 396-98).

As for Rhyder's physical impairments, which both parties focus their arguments and briefs upon, the record demonstrates that his primary physical issues involve his right shoulder - which he has a history of a full-thickness rotator cuff tear that required surgery to repair - degenerative joint disease, and neck and back pain. (Tr. 240, 316-19, 408, 409, 417-434, 486, 452, 562-621). A 2008 MRI of Rhyder's right shoulder shows a full thickness tear of the supraspinatus tendon with joint effusion and possible Hill-Sachs defect. (Tr. 452). Diagnostic imaging in May 2011 and September 2012 show moderate degenerative changes with chronic mild anterior wedging of the L4 vertebral body and multilevel cervical spondylosis. (Tr. 486,

552).

Rhyder's primary care physician, James Greenfield, D.O., and Andrea Ulshafer, PAC, have been treating him for chronic pain with medication and referrals to physical therapy. (Tr. 465-471, 493-496, 562-621, 647-56). Dr. Greenfield provided a medical source statement on June 22, 2011. Accompanying his medical opinions, Dr. Greenfield reviewed a functional capacity evaluation performed by Bob Murphy, DPT, CSCS, CEAS, a physical therapist at St. Luke's Sports and Rehabilitation, at his request. (Tr. 524-537). Dr. Greenfield opined that Rhyder could occasionally lift and carry 10 pounds and could frequently lift and carry 5 pounds. Dr. Greenfield also opined that Rhyder could stand and walk for four hours in an eight hour day and sit for four hours in an eight hour day; however, Rhyder would need to move/walk away for one minute after sitting or standing for ten minutes. (Tr. 524). Dr. Greenfield further opined that Rhyder should avoid completely twisting, stooping, squatting, and climbing, avoid all exposure to hazards or heights, and avoid concentrated exposure to extreme cold and heat, wetness, humidity, and poor ventilation. (Id).

Rhyder also had a consultative examination performed on May 20, 2010, by Shaukat H. Khan, M.D., at the request of the State Agency to assess his physical limitations. (Tr. 408-415). Dr. Khan noted Rhyder's right shoulder pain with mild-to-moderate limitation of range of motion. (Tr. 410). While Dr. Khan noted Rhyder's passive perception of pain was out of proportion to any physical evidence of any disability to right shoulder, he opined that Rhyder could occasionally lift and carry 20 pounds and frequently lift and carry 5 pounds, while also limited in pushing and pulling with the right upper extremity. Dr. Khan also opined that Rhyder could occasionally bend, kneel, stoop, crouch, crawl, balance, and climb. (Tr. 408-415).

*ii. Medical Opinions*

We first address Rhyder's contention that the ALJ failed to properly evaluate the opinions of his treating and examining sources. Rhyder argues that because the ALJ rejected the only two medical opinions in the record relating to Rhyder's physical impairments, the ALJ was forced to reach a RFC determination without the benefit of any medical opinion.

The ALJ must consider all of the relevant evidence and give a clear explanation to support his or her findings when determining the RFC. Fargnoli, 247 F.3d at 40, 41 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)). A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." Johnson, 529 F.3d at 202 (quoting Fargnoli, 247 F.3d at 43 (quoting 20 C.F.R. § 404.1527(d)(2))) (internal quotations omitted). If a treating physician's opinion conflicts with an opinion of a non-treating physician, the ALJ may reject the treating physician's opinion " 'only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d at 429). The ALJ determines what weight to give a medical opinion by considering factors such as the examining relationship, the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the record as a whole, and the medical source's specialization. 20 C.F.R. § 404.1527(c)(1-5). If the ALJ discounts certain evidence, he must give some indication of the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43.

The ALJ gave little weight to Dr. Greenfield's opinion, Rhyder's treating physician. (Tr. 30). In the ALJ's view, Dr. Greenfield's opinion was "not only inconsistent with his own clinical findings on physical examinations, but it [was] also inconsistent with his own comments and treatment recommendations." (Id). Moreover, the ALJ found that to the extent Dr. Greenfield "explicitly relied upon the physical therapist's findings" in the functional capacity evaluation to render an opinion, he assigned little weight to it because the physical therapist, Mr. Murphy, "questioned the validity of his own findings due to evidence of symptom magnification, malingering, and poor effort." (Id). Finally, the ALJ speculated that Dr. Greenfield's "unwillingness to prescribe narcotic medication ... in conjunction with his reference to possible malingering in [the] treatment notes, suggests that [he] ... questioned the veracity of [Rhyder's] subjective complaints of pain." (Id).

The ALJ also gave little weight to the opinion of Dr. Khan because his exertional limitations were not supported by his "own clinical findings or the other medical evidence of record." (Tr. 32). The ALJ also notes that Dr. Khan provided that Rhyder's "passive perception of pain was out of proportion to physical evidences." (Id). Therefore, the ALJ found that Dr. Khan overestimated Rhyder's exertional limitations.

We find that the ALJ's decision to reject the opinions of Rhyder's treating physician and the consultative examiner as to Rhyder's physical capacities, left the ALJ without a single medical opinion to rely upon in reaching a RFC determination. "Rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Maellaro v. Colvin, Civ. No. 3:12-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014); see Doak v. Heckler, 790 F.2d 26, 29 (3d

Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.").

Dr. Greenfield and Dr. Khan both opined that Rhyder was limited in some way in his ability to lift/carry: Dr. Greenfield opined that Rhyder could occasionally lift and carry 10 pounds and frequently lift and carry 5 pounds; Dr. Khan opined that Rhyder could occasionally lift and carry 20 pounds and frequently lift and carry 5 pounds. (Tr. 408-415, 524). In rejecting these two opinions, there were no other medical opinions upon which the ALJ could base her decision that Rhyder could perform medium work as defined in CFR 404.1567(c).[3]

It appears that the ALJ's conclusions as to lifting and carrying limitations was based, at least in part, on the disability analyst's opinion, and not on Rhyder's treating physician's opinion or consultative examiner's opinion. (Tr. 118-125). To the extent that the ALJ assigned any weight and/or relied upon the opinion of the single decision maker ("SDM"), Donna L Dubendorf, in assessing Rhyder's RFC, this is an error. SDM's are non-physician disability examiners who "may make the initial disability determination in most cases without requiring the signature of a medical consultant." *Social Security Administration, Notices*: 71 FR 45890-01, 2006 WL 2283653.

On May 19, 2010, Frank Cristaudo, the Chief Administrative Law Judge for the Social Security Administration, issued a memorandum citing POMS Instruction DI 24510.050C[4] and

---

[3] CFR 404.1567(c) defines "medium work" as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds ...."

[4] The "POMS" is the Social Security Administration's "Program Operations Manual System," an internal manual used by Social Security employees to process disability claims.

11

instructing all ALJs that RFC determinations by SDM's should not be afforded any evidentiary weight at the administrative hearing level. Therefore, any assignment of any evidentiary weight to an SDM's opinion is an error since they are "not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources." Bolton v. Astrue, Civ. No. 07-612, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008) (internal citations omitted); see Yorkus v. Astrue, Civ. No. 10-2197, 2011 WL 7400189 (E.D. Pa. Feb. 28, 2011).

As Judge Mariani noted in the Maellaro case, *supra*:

> Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination based on those administrative definitions and is reserved to the Commissioner. However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor. Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination ... Thus, while agency regulations provide the ultimate issues such as disability and RFC are reserved to the agency, it may not reject a physician's medical findings that determine the various components and requirements of RFC.

Maellaro, 2014 WL 2770717, at *11 (quoting Carolyn A. Kubitsheck & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts*, 344-45 (2014)).

Consequently, the ALJ's decision to reject the opinions of Dr. Greenfield and Dr. Khan, and the ALJ's determination of Rhyder's RFC, cannot be said to be supported by substantial evidence.

## V. CONCLUSION

Given the foregoing, we find that substantial evidence does not support the ALJ's assessment. Pursuant to 42 U.S.C. § 405(g), we will vacate the Commissioner of Social Security's decision and remand this case for further proceedings. We will decline to address Rhyder's other allegations of error, as remand may produce different results on these claims, making discussion of them moot. Burns, 156 F. Supp. 3d at 598; see LaSalle v. Comm'r of Soc. Sec., Civ. No. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011). An appropriate order follows.